UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHAHRIAR ALMASI, ET AL., ) | Case No.: 5:10-cv-03458 EJD |
| ) | |
| Plaintiffs, ) | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY** |
| v. ) | |
| ) | |
| EQUILON ENTERPRISES, LLC, ) | |
| ) | |
| Defendant. ) | **(Re: Docket Item No. 87)** |
| ) | |

Currently before the court is Defendant Equilon Enterprises, LLC's ("Equilon") Motion for Summary Judgment, Partial Summary Judgment, or, in the Alternative, Determination of Facts Without Controversy. See Docket Item No. 87. The Court held oral argument on December 9, 2011. After careful consideration of the briefing and evidence submitted by the parties, the motion is GRANTED IN PART and DENIED IN PART for the following reasons.

**I. BACKGROUND**

This case concerns Equilon's efforts to sell the real property on which seven Shell-branded service stations are located in San Mateo and Santa Clara Counties (the "Stations"). Each Plaintiff operates a Shell-branded service station in the San Francisco region pursuant to a Retail Facility Lease and a Retail Sales Agreement with Equilon. In 2005, Equilon made the decision to withdraw from the retail gasoline market and sell its retail assets, including all retail sites in the San

1

Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

Francisco region. Decl. David N. Burrow Supp. Mot. ¶ 10. As part of its national withdrawal strategy, Equilon devised a multi-step "portfolio process" to be followed in each of its markets to facilitate its withdrawal. Id. ¶ 11. Equilon's San Francisco market divestment closely followed this "portfolio process," including marketing the Stations to the general public as well as engaging in a competitive bidding process for the retail assets. Id. ¶ 12.

Equilon's San Francisco region included approximately 250 properties, divided by Equilon into seven "clusters." Decl. Lawrence D. Coburn Supp. Mot. ¶ 4. Each of the properties at issue in this suit were in "Cluster 7." Id. Equilon initially invited twenty-seven parties to sign a Confidentiality Agreement in order to participate in a first round of bidding. Id. ¶ 5. Twenty-three parties returned the Confidentiality Agreement and were sent first round bid instructions and Equilon's Confidential Information Memorandum for the market. Id. ¶ 5.

In response to the first round bid package, Equilon received ten non-binding bids, including a bid from Nakash. Id. ¶ 6. Second round bid instructions were sent out to the first round bidders on March 25, 2009, in which Equilon instructed bidders to submit "a bid for the full cluster . . . along with a purchase price allocation for each individual site." Id. ¶ 7. More detailed information regarding each property was made available to second round bidders to assist each in refining their bids. Id. ¶ 7. In the second round, Equilon received six offers from the original ten bidders, including from Nakash, again for all or portions of the market. Decl. Christopher Donelson Supp. Mot. ¶ 6. As part of the second round bid process, Equilon additionally had discussions with the bidders to better understand each bidder's proposed business plan and ability to secure funds for the purchase. Id. ¶ 5.

Nakash was ultimately selected as the purchaser for Cluster 7, which includes the Stations. Id. ¶ 11. Nakash executed an Offer to Purchase Premises (the "Third Party Offer") and an Addendum to Offer to Purchase Premises (the "Addendum") for each Station. Decl. Larry O. McCamish Supp Mot. ¶¶ 4-5; Defendant's Notice of Lodgment Exhibits Supp. Mot., Docket No. 81, ("DNOL") Exs. 5-11 (Nakash's Third Party Offers and Addendums for each of the Stations). Equilon sent each Plaintiff a ROFR to purchase its Station on terms identical to the Third Party

2

Offer by Nakash, attaching to each ROFR a copy of Nakash's Third Party Offer. Decl. Larry O. McCamish ¶¶ 7-8, DNOL Exs. 12-18. Plaintiffs each accepted the ROFRs under protest. Id. ¶¶ 9-15; DNOL 19-25 (Letters sent on behalf of each Plaintiff to Equilon accepting ROFRs under protest).

On August 6, 2010, Plaintiffs filed this lawsuit against Equilon claiming that the Third Party Offers were not "bona fide" and alleging violations of Cal. Bus. & Prof. Code § 20999.25, and Cal. Bus. & Prof. Code § 17200 ("UCL") and requesting declaratory relief and punitive damages.

## II. LEGAL STANDARDS

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp v. Catrett, 477 U.S. 317, 323–24 (1986). That burden may be met by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. Id. at 323–34; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1968). Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp v. Catrett, 477 U.S. at 322.

Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. Anderson, 477 U.S. at 248; see also Aprin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu v. Fred Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000).

3

Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

It is not the task of the district court "to scour the record in search of a genuine issue of triable fact. [Courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996); see also Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

### III. DISCUSSION

#### A.     Additional Briefs Filed Objecting To Evidence

In addition to the motion, opposition, and reply brief and supporting declarations, the parties have also filed separate briefs objecting to evidence and responding to objections. Civil Local Rule 7-4 states that "Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum. Pursuant to Civil L.R. 7-4(b), the reply brief or memorandum may not exceed 15 pages of text." Here, in addition to Equilon's 15-page reply brief, Equilon filed a 16-page brief objecting to Plaintiffs' evidence submitted in support of their opposition. See Docket No. 98-2. Thus, Equilon violated Civil L.R. 7-4 by failing to include its evidentiary objections in its reply brief and impermissibly submitting an additional 16-pages of argument in reply to the opposition brief.

The court therefore will not consider Defendant Equilon Enterprises LLC's Objections To Plaintiffs' Evidence Submitted in Opposition to Equilon's Motion For Summary Judgment, Or, In the Alternative, Determination of Facts Without Controversy, As To Each Plaintiff. See Docket No. 98-2. Additionally, the court will not consider the 15-page brief Plaintiffs filed opposing those evidentiary objections. See Docket No. 101.

#### B.     Cal. Bus. & Prof. Code § 20999.25

Generally, the Petroleum Marketing Practices Act ("PMPA") covers the business relationship between franchisors and franchisees in the petroleum industry. See 15 U.S.C. §§ 2801–06; see also Atlantic Richfield Co. v. Herbert (In re Herbert), 806 F.2d 889, 892 (9th Cir.

4

1986) ("In enacting the PMPA, Congress attempted to provide national uniformity of petroleum franchise termination law."). The PMPA applies when a franchise is terminated or not renewed. 15 U.S.C. § 2806(a); Forty–Niner Truck Plaza, Inc. v. Union Oil Co. of Cal., et al., 58 Cal. App. 4th 1261, 1275 (1997). The PMPA, however, does not cover a situation where the franchise continues, such as when a franchisor assigns its obligations to another. 15 U.S.C. § 2806(b)(1); Forty–Niner, 58 Cal. App. 4th at 1275.

In California, Cal. Bus. & Prof. Code § 20999.25(a) "facilitates the purchase of retail service stations by their independent lessee-franchisees in contexts outside franchise termination and nonrenewal." Forty–Niner, 58 Cal. App. 4th at 1273. Accordingly, § 20999.25(a) allows a petroleum marketing franchisee, typically a service station operator, a bona fide opportunity to buy the station if the petroleum marketing franchisor, typically an oil company, is going to sell it to another. Id. Specifically, under § 20999.25(a), a franchisor, like Equilon, who wants to sell a service station premises that it owns and leases to franchisees, such as Plaintiffs, may either: (1) make a "bona fide offer" to sell its interest in the premises to the franchisee; or (2) give the franchisee "a right of first refusal ["ROFR"] of any bona fide offer acceptable to the franchisor made by another to purchase the franchisor's interest in the premises." Cal. Bus. & Prof. Code § 20999.25(a).

"California law recognizes that parties to a purchase transaction involving many sites can allocate a portion of the total purchase price to a single site to allow another party to exercise a right of first refusal on the single site." Forty–Niner, 58 Cal. App. 4th at 1279. A ROFR is sufficient when (1) the valuation of individual properties is readily apparent and (2) there is no evidence of unfair manipulation. Id. at 1280 (citation omitted). Additionally, the offer made by the third party for which the franchisee is offered the right of first refusal must be bonafide. Id. at 1281.

Equilon moves this court to find that it presented Plaintiffs with ROFRs based on bona fide offers to purchase the Stations, that the valuations of the Stations were apparent, and that Equilon did not manipulate the values that would render Nakash's Third Party Offers a sham.

5

Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

### 1. Valuation of Individual Properties Is Readily Apparent

Equilon moves for partial summary judgment that the valuations of the Stations are readily apparent from the face of the offers. Here, the parties do not dispute that Nakash's Third Party Offers consisted of the following properties and purchase prices clearly stated in each Third Party Offer and Addendum (1) 201 La Cuesta Drive $850,000; (2) 776 N. Mathilda Ave. $1,600,000; (3) 2455 Lawrence Expressway $1,650,000; (4) 255 Saratoga/Los Gatos $1,400,000; (5) 20999 Stevens Creek Blvd. $1,175,000; (6) 6097 Snell Avenue $1,500,000; and (7) 3939 Snell Avenue $1,750,000. DNOL Exs. 5-11. Although Plaintiffs argue that valuation of the individual properties are not readily apparent because the offered price for each Station is inflated, the Third Party Offers clearly state the valuation of each Station. See id. Plaintiffs have cited no authority to support their argument that clearly stated valuations for individual properties are not readily apparent if they are inflated. Thus, Plaintiffs have not shown there exists a genuine issue of fact regarding whether the valuation of the individual properties are readily apparent. Equilon's motion for partial summary judgment that the valuations of the Stations are readily apparent from the face of the offers therefore is GRANTED.

### 2. No Evidence of Unfair Manipulation

Additionally, Equilon moves for partial summary judgment that there is no evidence that the valuations of the Stations were manipulated to Plaintiffs' disadvantage. Plaintiffs argue that Nakash manipulated its purchase price allocations for the individual assets to its advantage or to the advantage of Equilon. Specifically, Plaintiffs argue that because Nakash purchased multiple sites, as well as other rights, from Equilon in the same Asset Purchase and Sale Agreement ("PSA"), Nakash was able to manipulate the prices it offered for individual stations without changing the overall cost of the PSA. In support of their argument, Plaintiffs cite to the fact that on March 24, 2010, just days before the PSA was executed, Nakash increased its purchase price allocation for a number of stations in Cluster 7 and decreased its price allocation for other stations in a manner that left the overall purchase price for Cluster 7 unchanged. See Opp'n at 16.

6

Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

Plaintiffs have provided Nakash's June 1, 2009 Revised Round 2 Bid for Clusters 5, 6, and 7 including a chart showing individual purchase prices for each station. Plaintiffs' Notice of Lodgement ("PNOL") Ex. 10. Plaintiffs annotated this chart to show which stations are owned by Plaintiffs and which stations are owned by Nakash. Decl. Thomas P. Bleau ¶ 12; PNOL Ex. 10. Plaintiffs have also provided Nakash's March 24, 2010 allocated purchase prices for the stations in Cluster 7. Bleau Decl. ¶ 16; PNOL Ex. 14. Plaintiffs have annotated this list to indicate the stations for which the purchase price increased from the Revised Round 2 Bid and the stations for which the purchase price decreased.

According to Plaintiffs' evidence, between June 1, 2009 and March 24, 2010, the price for three stations decreased, including one station owned by a Plaintiff that decreased in price by $300,000. PNOL Ex. 14 at ALMASI 28556, row 9. The price for four stations increased, including one station owned by a Plaintiff that increased in price by $250,000. Id. at row 27. Thus, according to these exhibits, the changes in Nakash's offer on March 24, 2010 resulted in a net $50,000 decrease in purchase price for Plaintiffs' Stations. Although Plaintiffs argue that inflating the purchase price of the Stations would impair their ability to exercise their ROFRs, Plaintiffs have offered no argument regarding how a decrease in purchase price for the station could demonstrate unfair manipulation. Because these exhibits show a net decrease in purchase price for Plaintiffs' Stations, these exhibits do not show that the prices were changed so as to disadvantage Plaintiffs. Additionally, these exhibits do not show that the new prices are unreasonable or unfair to Plaintiffs.

Thus, Plaintiffs have failed to cite to evidence showing a genuine dispute about whether Nakash or Equilon unfairly manipulated the prices for the individual stations. Equilon's motion for partial summary judgment that there is no evidence that the valuations of the Stations were manipulated to Plaintiffs' disadvantage is GRANTED.

### 3. Bonafide Offers

Equilon also moves for partial summary judgment that the Third Party Offers underlying the ROFRs are bona fide. In determining whether an offer is bona fide, courts have ruled that a bona fide offer approaches fair market value under an objectively reasonable analysis. Forty–Niner,

7

Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

58 Cal. App. 4th at 1281 (citations omitted). The Forty–Niner case provides the following four principles as guidance in determining whether an offer approaches fair market value under an objectively reasonable analysis.

> "(1) Fair market value, by definition, is the highest price a willing buyer would pay. The fair market value of any one property is a flexible concept, however: There is no universally infallible index of fair market value. A range of prices may reasonably claim to be the fair market value. As such, an offer is bona fide if it merely approaches fair market value under an objectively reasonable analysis—assuming that all of the conditions of sale are reasonable. Furthermore, in determining the fair market value of a property, no one valuation method is required. There are many acceptable ways to appraise property. The facts of each individual case should set the terms of what constitutes a bona fide offer. As such, an analysis of the valuation methods is necessary.
>
> (2) Under section 20999.25(a), the bona fide offer is of the franchisor's interest in the marketing premises. 'Marketing premises' means premises, which are to be employed by the franchisee in connection with the sale, consignment, or distribution of fuel. Thus, a bona fide offer includes the sale of pumps, dispensers, storage tanks, piping and other equipment necessary for the continued operation of a service station. Section 20999.25(a), like the PMPA, allows franchisees a reasonable opportunity to continue operating their facilities if they exercise their right to buy.
>
> (3) In the sale of [a network of stations], more is "being offered for sale" than just the individual station and its operative equipment. "[B]idders routinely come to the table with different hands." A prospective third party buyer of several stations, like [defendant], may have preexisting or planned commercial relationships that give it certain advantages in acquiring a franchise on a particular site. Ibid. This doesn't make that third party's offer for the particular site any less bona fide, so long as that offer is an actual one that approaches fair market value under an objectively reasonable analysis;
>
> and (4) "An actual price, agreed to by a willing buyer and a willing seller, is the most accurate gauge of the value the market places on a good." That price is a measure of what the station is worth to a purchaser in [defendant's] position. Thus, the strategic value of [the stations] to [defendant's other holdings] is a valid factor to consider in determining the fair market value of [the stations] to [defendant], and therefore whether "bona fide offers" for those [stations] were forwarded for purposes of section 20999.25(a)."

Id. at 1282-83 (internal citations, quotations, and punctuation omitted).

Plaintiffs argue that Nakash offer is not bona fide because the Third Party Offers and the ROFRs contain several "commercially unreasonable" terms and conditions "because they set each Plaintiff's ability to close escrow up for failure from the start of the transaction." Decl. Scott Olson Supp. Pls.' Opp'n Ex. 1 at 6-7. First, Plaintiffs argue that the ROFR requires Plaintiffs to conduct all of their environmental due diligence in the same 45 days that they have to evaluate the ROFR,

8

Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

accept the Title Commitment and Title Survey, secure financing and accept the ROFR by paying a non-refundable earnest money deposit. Opp'n at 22; Olson Decl., Ex. 1 at 2-11; Decl. CJ Lynden Supp. Pls.' Opp'n Ex. 1 at 3-17. Plaintiffs also argue that the offer includes deed restrictions that are unreasonable because: (1) the restrictions will necessarily encumber the title to the properties; (2) will negatively affect their value and marketability; (3) prevent future re-development of the property for anything but commercial purposes; and (4) hinder Plaintiffs' ability to secure a commercial loan for the purchase of properties. Id.

Equilon does not address the sufficiency of the evidence submitted by Plaintiffs in support of their argument that the terms of the Third Party Offers and the ROFRS are commercially unreasonable. Rather, Equilon argues that an inquiry into the supposed "commercial reasonableness" of any term in the ROFR is simply outside the scope of determining whether a ROFR complies with Section 20999.25. In support of its argument, Equilon cites to two similar cases where a court in the Central District of California granted summary judgment for defendants. Opp'n at 16:14-17 and 18:1-16.

Equilon cites to the Order Granting in Part Defendant's Motion for Expert Witness Fees in AID, Inc. v. Equilon Enterprises LLC, et al.,[1] where the court states that it previously "noted that [] Plaintiff's contention that provisions of the ROFR were commercially unreasonable [was] 'of no consequence' to the determination of . . . whether Defendant ultimately complied with the PMPA's ROFR requirements." AID, Inc., No. CV 09-7188 ODW (PLAw), slip op. at 1, n.1 (C.D. Cal. Sept. 28, 2010). In the court's prior order granting Equilon's motion for summary judgment, the court found that, "[w]hen a franchisor presents the franchisee the same offer extended by a third-party bidder, there is a strong presumption that the franchisor complied with the PMPA's right of first refusal requirement," and thus the court would not "engage in judicial second-guessing of each and

---

[1] In Equilon's Request for Judicial Notice submitted with its motion and throughout its motion and reply briefs, Equilon claims it has attached the Order Granting in Part Defendant's Motion for Expert Witness Fees, Armaswalker v. Equilon Enterprises LLC, et al., Case No. CV 09-7183 ODW (PLAw) (C.D. Cal. Sept. 28, 2010) as Exhibit 2 to its Request for Judicial Notice ("RJN"). See, e.g., RJN ¶ 2, Docket No. 87-1; Mot. at 18 n. 7. The document attached as Exhibit 2 to the RJN, however, is from a different case—AID, Inc. v. Equilon Enterprises, LLC, Case No. CV 09-7188 ODW (PLAw).

9

Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

every term included in the Third-Party Offer and ROFR." <u>AID, Inc. v. Equilon Enterprises, LLC, et al.</u>, Case No. CV 09-7188 ODW (PLAw), slip op. at 10, 12 (C.D. Cal. July 19, 2010) (internal citations omitted).

In <u>Barja, Inc. v. Equilon Enterprises, LLC</u>, No. CV 10-06936 ODW (PLAx), 2011 WL 2669201, at *7 (C.D. Cal. July 7, 2011), the same court reached the same conclusion and granted summary judgment on plaintiffs' Section 20999.25 claim. The court, citing only cases involving ROFRs brought under the PMPA, held that

> "[The franchisee . . . only has the right to match the terms of the contract between the franchisor and the prospective buyer. While parties certainly have the right to negotiate further terms, franchisees generally cannot move the court to evaluate the reasonableness of terms to which third parties have accepted. Accordingly, and in this instance, the Court refrains from second guessing each and every term included in [defendant's] Third Party Offers and the ROFR's."

<u>Barja, Inc. v. Equilon Enterprises, LLC</u>, No. CV 10-06936 ODW (PLAx), 2011 WL 2669201, at *7 (C.D. Cal. July 7, 2011) (internal citations omitted).

Under the PMPA, a ROFR offered to a franchisee need only be "of an offer, made by another, to purchase such franchisor's interest in such premises." 15 U.S.C. § 2802 (b)(3)(D)(iii)(II). "Unlike with respect to a 'bona fide offer,' neither the statutory text nor any case law suggests that a court is to review the commercial reasonableness of ROFR terms." <u>Armaswalker v. Equilon Enterprises LLC</u>, 472 Fed. Appx. 484, 486 (9th Cir. 2012).

Under Section 20999.25(a), however, a ROFR offered to a franchisee must be "of any *bona fide* offer acceptable to the franchisor made by another." Cal. Bus. & Prof. Code § 20999.25(a) (emphasis added); <u>Forty-Niner</u>, 58 Cal. App. 4th at 1281 (holding that if the franchisor makes the franchisee an offer or if the franchisor offers the franchisee a ROFR, "[e]ither way, a bona fide offer has to be forwarded."). Thus, Section 20999.25 requires that the ROFR be of a bona fide offer, and an offer is bona fide if it "approaches fair market value under an objectively reasonable analysis—<u>assuming that all of the conditions of sale are reasonable</u>." <u>Forty-Niner</u>, 58 Cal. App. 4th at 1281 (internal punctuation omitted).

In light of these differing requirements for ROFRs under the PMPA and Section 20999.25, Equilon has failed to demonstrate that "Plaintiffs' claim that the ROFRs are not 'bona fide'

10
Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

because they contain commercially unreasonable terms fails as a matter of law because Section 20999.25 does not require that the terms of a Third Party Offer or ROFR be commercially reasonable." Mot. at 1:18-20. Thus, Equilon's motion for partial summary judgment as to that fact is DENIED.

Additionally, Equilon has not addressed the sufficiency of Plaintiffs' evidence regarding commercial reasonableness or offered its own evidence regarding the offers' commercial reasonableness. Thus, Equilon has not demonstrated that there is an absence of a genuine dispute regarding whether the terms in the Third Party Offers and the ROFRs are commercially reasonable. Accordingly, Equilon's motion for partial summary judgment that the Third Party Offers underlying the ROFRs are bona fide is DENIED.[2] As a result, Equilon's motion for summary judgment as to Plaintiffs claims under Section 20999.25 is also DENIED.

### C. UCL Claims

Equilon moves for summary judgment on Plaintiffs' UCL claims. Equilon argues that Plaintiffs' unfair competition claim is identical to its Section 20999.25 claim, namely that (1) each ROFR extended to Plaintiffs contains a purchase price for each Station that is higher than the property's appraised fair market value; and (2) that various provisions in the Third Party Offers are unreasonable. Equilon argues that neither of these claims support a UCL claim.

The purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002). The UCL proscribes unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The Legislature intended by this sweeping language to permit tribunals to enjoin ongoing wrongful business conduct in whatever context such activity might occur." Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 181 (1999) (internal citations and punctuations omitted).

---

[2] Because Equilon's motion for partial summary judgment that the offers are bona fide is denied on this basis, the court need not address Plaintiffs' arguments that (1) the offers are not bona fide because Nakash's bids on the Stations were bundled with multiple other rights and thus included inflated prices for the Stations; (2) the terms and conditions in the ROFRs and the Third Party Offers differ; and (3) that Equilon failed to offer its entire interest in the Stations.

11
Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

"Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." Id. at 180 (internal citations omitted).

### 1. Unlawful

Equilon moves for partial summary judgment that its conduct is not unlawful because the requirements of Section 20999.25 have not been met. As discussed above, the court denies Equilon's motion for summary judgment regarding Section 20999.25 because Equilon failed to show there is an absence of a genuine dispute regarding whether the Third Party Offers underlying the ROFRs are bona fide. An unlawful business practice proscribed by the UCL "includes 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" Farmers Ins. Exchange v. Superior Court, 2 Cal. 4th 377, 383 (1992) (internal citation omitted). "By 'borrowing' violations of other laws, the UCL deems those violations 'unfair competition' independently actionable under the UCL." Smith v. Wells Fargo Bank, 135 Cal. App. 4th 1463, 1480 (2006) (quoting Cel–Tech Communications, Inc., 20 Cal. 4th at 180).

Because Equilon's motion for partial summary judgment that Equilon's conduct was not unlawful under Section 17200 is derivative of its motion regarding the Section 20999.25 claims, which has been denied, Equilon's motion for partial summary judgment regarding the unlawful prong of the UCL is DENIED. Additionally, because the UCL is written in the disjunctive, and Equilon failed to show that there is an absence of a genuine dispute regarding the unlawful prong of the UCL, Equilon's motion for summary judgment on Plaintiffs' UCL claim is also DENIED.

### 2. Fraudulent

Equilon moves for partial summary judgment that its alleged conduct was not "fraudulent" under the UCL because Plaintiffs have no evidence to prove the alleged conduct is likely to deceive members of the public. To state a claim under the "fraudulent" prong of the UCL, a plaintiff must show that "reasonable members of the public are likely to be deceived" by the alleged unfair

12

Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

business practice, though the "deception need not be intended." Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010) (internal quotations omitted).

Equilon argues that there are no allegations in the Complaint or facts in Plaintiffs' discovery responses that indicate that Equilon's alleged conduct is likely to deceive consumers, and Plaintiffs have no evidence that Equilon's alleged conduct is likely to deceive members of the public. Plaintiffs do not address this argument in their opposition, much less cite to materials in the record that demonstrate a genuine dispute regarding whether Equilon's conduct is likely to deceive members of the public. Thus, Equilon's motion for partial summary judgment that its alleged conduct was not "fraudulent" under the UCL is GRANTED.

### 3. Unfair

Equilon moves for partial summary judgment that its alleged conduct was not "unfair" under Section 17200 as Plaintiffs have no evidence to prove that Equilon's alleged conduct threatens an incipient violation of an anti-trust law, or violates the policy or spirit of one of those laws, or otherwise significantly threatens or harms competition. Specifically, Equilon argues that there are two types of "unfair" business practice cases—those involving business competitors and those involving consumers—and the standard for determining what constitutes an "unfair business practice" under the UCL differs for the two types. Equilon argues that Plaintiffs are neither consumers nor competitors. Equilon further argues that, even if Plaintiffs were to be treated as competitors, Plaintiffs cannot show that Equilon's alleged conduct is an unfair practice under the relevant standard.

Plaintiffs urge that the correct standard to determine "whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." Opp'n at 24:4-16 (citing Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740 (1980)). The balancing test described by Plaintiffs is one standard that is commonly applied in consumer cases. See, e.g., id.; Rubio, 613 F.3d at 1204-05 (discussing the applicable standards to defining an unfair act in the context of a

13

Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

UCL consumer action, including the balancing test). Plaintiffs, however, argue that their "case is not one that is brought on by consumers or competitors." Opp'n at 23:24-26.

Having denied being consumers, Plaintiffs do not cite any authority indicating that the balancing test applies in cases where a plaintiff is not a consumer. Additionally, Plaintiffs do not cite any case indicating that plaintiffs, who are neither consumers nor competitors, can bring a claim under the unfair prong of the UCL. Thus, Plaintiffs have failed to provide any support for their argument that they are able to bring a UCL claim for unfair practices despite not being consumers and not being competitors.

Regardless of whether Plaintiffs' claims are evaluated under the standard applicable to consumer claims or competitor claims, they have failed to cite to any materials in the record demonstrating that a genuine dispute exists. In fact, Plaintiffs do not cite the record once in their opposition to Equilon's motion on this claim. Even if the court were to apply the balancing test as Plaintiffs urge, Plaintiffs have not cited to any materials in the record demonstrating that a genuine dispute exists with regard to how the impact of Equilon's acts on Plaintiffs balance against Equilon's reasons, justifications and motives. In fact, Plaintiffs do not cite the record once in their opposition to Equilon's motion on this claim. Similarly, if the court were to treat Plaintiffs as competitors alleging anticompetitive practices, Plaintiff has not cited to any materials in the record demonstrating that Equilon's conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Communications, Inc., 20 Cal. 4th at 186-187.

In sum, Plaintiffs deny being consumers or competitors of Equilon and have cited no evidence indicating a genuine dispute exists as to whether Equilon's conduct constituted an unfair business practice under either the standard applicable to consumers or to competitors. Thus, Equilon's motion for partial summary judgment that "Equilon's alleged conduct was not 'unfair' under Section 17200 as Plaintiffs have no evidence to prove that Equilon's alleged conduct

threatens an incipient violation of an anti-trust law, or violates the policy or spirit of one of those laws, or otherwise significantly threatens or harms competition" (Mot. at 1:25-28) is GRANTED.

### D. Declaratory Relief

Equilon moves for summary judgment on Plaintiffs' claim for declaratory relief. Plaintiffs have moved for declaratory relief with respect to controversies regarding (1) the parties' rights and obligations pursuant to Section 17200, (2) whether Equilon's ROFRs are "bona fide offers" within the meaning of Section 20999.25, and (3) whether Equilon should be enjoined from selling the subject premises until the conclusion of this action, pursuant to Business and Professions Code § 20999.3. Compl. ¶ 43. Equilon argues that because Equilon is entitled to judgment as a matter of law on Plaintiffs' Section 20999.25 and UCL claims, there is no need for a declaration of the rights and obligations of the parties with respect to these laws or whether there is a need for injunctive relieve prohibiting Equilon from selling the Stations to Nakash.

Because Equilon's motion for summary judgment has been denied as to Plaintiffs' Section 20999.25 and UCL claims, its derivative motion for summary judgment on Plaintiffs' declaratory relief claims is also DENIED.

### E. Punitive Damages

Equilon moves for summary judgment on Plaintiffs' claims for punitive damages or for partial summary judgment that Equilon did not act with oppression, fraud, or malice as necessary to support a punitive damages award under any claim pled.

Equilon correctly argues that punitive damages are not recoverable under the UCL because the available remedies under the UCL are limited to injunctive relief and restitution. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144–45 (2003). Equilon further argues that it is unclear whether Section 20999.25 permits punitive damage, and to the extent Plaintiffs rely on Cal. Civil Code § 3294 for their punitive damages claim, Plaintiffs have failed to provide any evidence that Equilon was guilty of oppression, malice or fraud.

In Plaintiffs' Complaint, Plaintiffs allege they are entitled to punitive damages pursuant to Cal. Civil Code § 3294. Section 3294 provides that "[i]n an action for the breach of an obligation

15
Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

1  not arising from contract, where it is proven by clear and convincing evidence that the defendant
2  has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may
3  recover damages for the sake of example and by way of punishing the defendant." Cal. Civil Code
4  § 3294.

Here, Plaintiffs did not address Equilon's argument regarding punitive damages in their opposition. Plaintiffs therefore have not cited any materials demonstrating a genuine dispute as to whether Equilon acted with malice, oppression, or fraud. Thus, Equilson's motion for summary judgment on Plaintiffs' claims for punitive damages is GRANTED.

## V. CONCLUSION

For the reasons discussed above, Equilon's motion for summary judgment is GRANTED as to Plaintiffs' claims for punitive damages and DENIED as to Plaintiffs' claims for relief pursuant to California Business & Professions Code § 20999.25; Plaintiffs' claims for relief pursuant to California Business & Professions Code § 17200, et seq.; and Plaintiffs' claims for declaratory relief.

Additionally, Equilon's motion that the court determine the following facts are not genuinely in dispute and shall be treated as established in this case is GRANTED as to the following facts:

- "The valuations of the Stations are readily apparent from the face of the offers." Mot. at 1:14.
- "There is no evidence that the valuations of the Stations were manipulated to Plaintiffs' disadvantage." Id. at 1:15-16.
- "Equilon's alleged conduct was not "fraudulent" under Section 17200 as Plaintiffs have no evidence to prove the alleged conduct is likely to deceive members of the public." Id. at 1:23-24.
- "Equilon's alleged conduct was not "unfair" under Section 17200 as Plaintiffs have no evidence to prove that Equilon's alleged conduct threatens an incipient violation of an anti-trust law, or violates the policy or spirit of one of those laws, or otherwise significantly threatens or harms competition." Id. at 1:25-28.
- "Equilon did not act with oppression, fraud, or malice as necessary to support a punitive damages award under any claim pled." Id. at 2:1-2.

Equilon's motion that the court determine the following facts are not genuinely in dispute and shall be treated as established in this case is DENIED as to the following facts:

- "The Third Party Offers underlying the ROFRs are 'bona fide.'" Id. at 1:17.

16
Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY

- "Plaintiffs' claim that the ROFRs are not 'bona fide' because they contain commercially unreasonable terms fails as a matter of law because Section 20999.25 does not require that the terms of a Third Party Offer or ROFR be commercially reasonable." Id. at 1:18-20.
- "Equilon's conduct was not 'unlawful' under Section 17200 because Equilon met the requirements of Section 20999.25." Id. at 1:21-22.

The court schedules this case for a Preliminary Pretrial Conference on **November 30, 2012**, at 11:00 a.m. The parties shall file a Joint Preliminary Pretrial Conference Statement on or before **November 20, 2012**.

**IT IS SO ORDERED.**

Dated: September 10, 2012



EDWARD J. DAVILA
United States District Judge

17
Case No.: 5:10-cv-03458 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DETERMINING FACTS WITHOUT CONTROVERSY